IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INDAG GmbH & Co. Betriebs KG and WILD PARMA S.r.L., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. ) |
| IMA S.p.A, IMA NORTH AMERICA, INC., IMA INDUSTRIES, INC., IMA INDUSTRIES NORTH AMERICA, INC. and FILLSHAPE S.R.L., | ) **JURY DEMAND** ) ) ) ) |
| Defendants. | ) |

**COMPLAINT**

1. This is a Complaint for patent infringement and misappropriation of trade secrets. Plaintiff INDAG GmbH & Co. Betriebs KG ("Indag") has been assigned all the rights, title and interest in U.S. Patent No. 7,648,017 ("the '017 patent"), entitled "Apparatus and method for Feeding Pouches and Spouts for Processing."

2. Defendants IMA S.p.A., IMA North America, Inc. IMA Industries Inc., IMA Industries North America Inc. (collectively "IMA") and FillShape S.r.l ("FillShape," collectively with IMA, "Defendants") have used and continue to use Indag's patented technology in machines that they have offered for sale at a trade show in Chicago, IL.

3. Furthermore, Plaintiffs Indag and Wild Parma, S.r.L. ("Wild Parma") own valuable trade secret and confidential information in their spouted pouch welding and filling technology. Defendants have unlawfully misappropriated such trade secrets in their development of a competing spouted pouch welding and filling machine. IMA and FillShape have offered such machines for sale in Chicago, IL as set forth herein.

## NATURE OF THE CASE

4. Plaintiff INDAG GmbH & Co. Betriebs KG ("Indag") and Plaintiff Wild Parma, S.r.L. (collectively with Indag, "Plaintiffs") are in the business of developing, selling and/or licensing pouch making and filling machinery, including hot filling machinery and aseptic cold filling machinery. Plaintiffs are innovative worldwide leaders in the development of pouch technology. A significant percentage of the worldwide pouches are produced with Indag machinery.

5. Indag and Wild Parma have developed numerous systems and have patented certain aspects of their machinery. Other aspects of their proprietary machinery remain as trade secrets.

6. Defendants IMA S.p.A., IMA North America, Inc., IMA Industries Inc., IMA Industries North America Inc. (collectively "IMA") and FillShape S.r.l (collectively with IMA, "Defendants") sought to capitalize on Plaintiffs' extensive knowledge, know-how, and experience in pouch making technology and hired Mr. Filippo Furlotti, a former engineer at Wild Parma, to develop a competitive machine. Prior to joining Defendants, Mr. Furlotti misappropriated confidential and trade secret information from Plaintiffs and, on information and belief, during the course of his employment by Defendants, he has used such information in developing competing pouch making and filling machines for Defendants' benefit.

7. Furthermore, Defendants have offered for sale machines at a trade show in Chicago, Illinois that incorporate Plaintiffs' patented technology as described herein as well as Plaintiffs' trade secrets and confidential information.

**THE PARTIES**

8. Plaintiff INDAG GmbH & Co. Betriebs KG ("Indag") is a German corporation with its principal place of business located at Rudolf-Wild-Str. 107 – 115, 69124 Eppelheim / Heidelberg, Germany.

9. Plaintiff Wild Parma is an Italian corporation with its principal place of business located at Via VIII Marzo 85, Collechio 43044 Italy. Wild Parma is a wholly owned subsidiary of Indag.

10. Upon information and belief, Defendant IMA S.p.A. is an Italian corporation with its principal place of business located at Via Emilia, 428/442, 40064 Ozzano dell'Emilia, Bologna, Italy.

11. Upon information and belief, Defendant IMA North America, Inc. ("IMA NA") is a Connecticut corporation with its principal place of business at 7 New Lancaster Road, Leominster, Massachusetts 01453. IMA NA is indirectly a wholly owned subsidiary of IMA S.p.A.

12. Upon information and belief, Defendant IMA Industries, Inc. ("IMA Industries") is an Illinois corporation with its principal place of business in 1385 Armour Blvd, Mundelein, Illinois 60060. IMA Industries is indirectly a wholly owned subsidiary of IMA S.p.A.

13. Upon information and belief, IMA Industries North America Inc. ("IMA Industries NA") is a Massachusetts corporation with its principal place of business at 7 New Lancaster Road, Leominster, Massachusetts 01453. IMA Industries NA is a wholly owned subsidiary of IMA S.p.A.

14. Upon information and belief, Defendant FillShape S.r.l ("FillShape") is an Italian Corporation with its principal place of business in Via John Fitzgerald Kennedy 17, 40069, Zola Predosa, Bologna Italy. FillShape is a subsidiary of IMA S.p.A.

**JURISDICTION AND VENUE**

15. This is an action for patent infringement and misappropriation of trade secrets. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the patent laws of the United States, including 35 U.S.C. § 271 *et seq*. This Court also has subject matter jurisdiction of the pendant claims of misappropriation of trade secrets arising under the Illinois Trade Secrets Act (765 ILCS 1065/1 *et seq*) and Article 98 of the Italian Industrial Property Rights Code pursuant to 28 U.S.C. §1367(a).

16. This Court has personal jurisdiction, general and specific, over IMA S.p.A. because, among other things, IMA S.p.A has marketed its products, including products infringing Indag's patents and using Plaintiffs' trade secrets and confidential information at a trade show in Chicago, Illinois and thus, intentionally availing itself of the privilege of conducting business in this district. Defendant IMA S.p.A. has significant contacts in the United States, and thus, personal jurisdiction is proper. IMA S.p.A. has three wholly owned subsidiaries in the United States and two of these subsidiaries are the marketing arms of IMA S.p.A., while the third is a manufacturing facility. IMA Industries NA is advertised as a "branch" of IMA S.p.A. and as "the representative of all IMA Industries subsidiaries for the U.S. . ." Both IMA Industries and IMA Industries NA market the machines manufactured by the IMA "Group" companies and provide the related customer service in its respective territory. On information and belief, the purpose of the US IMA entities is to conduct the business of its parent organization. Moreover, IMA S.p.A. shares board members with its U.S. subsidiaries. For example, IMA S.p.A.'s Chairman and CEO and its Chief Operating Officer are also the President of IMA NA, a Connecticut corporation, having its principal place of business in Massachusetts, and the Director of the IMA NA, respectively.

17. This Court has personal jurisdiction, general and specific, over IMA NA, because IMA NA does business within this state and by appearing in Chicago at a trade show and promoting and offering for sale products that infringe the '017 patent.

18. This Court has personal jurisdiction, general and specific over IMA Industries, because IMA Industries is incorporated in this State, and its principal place of business is within this district.

19. This Court has personal jurisdiction, general and specific, over IMA Industries NA, because IMA NA does business within this state, by appearing in Chicago at a trade show and promoting and offering for sale machinery that infringes the '017 patent.

20. This Court has specific personal jurisdiction over FillShape because FillShape was cognizant that its manufactured machines incorporating the patented technology and the misappropriated trade secrets were to be offered for sale in the United States through the marketing companies (i.e. IMA NA and IMA Industries) of IMA S.p.A., and in particular, in this district. Accordingly, FillShape has deliberately placed its infringing machines into the stream of commerce with the intention that such machines would be offered for sale in this district.

21. Venue is appropriate in this district because Defendants are responsible for acts of infringement occurring in this district and offering for sale products utilizing Plaintiffs' trade secrets in this district as alleged in this Complaint.

## FACTUAL BACKGROUND

22. Pouch welding and filling machinery can be used to fill a beverage pouch with liquid, e.g., fruit flavored beverages. In an exemplary machine, spouts and pouches are first welded together, then sterilized and lastly filled with product. The methods of aseptic filling and capping, the construction of welding grippers and the pouch portioning unit, are examples of confidential information and/or trade secrets that Plaintiffs have not divulged to the public.

23. Plaintiffs have been developing pouch making and filling technology for over 35 years. Spouted pouch technology, which is the technology at issue here, has been in development since 2002. Over the years Plaintiffs have made significant advances in the design and construction of pouch making and filling machines and have made such machines increasingly efficient. Plaintiffs have invested significant time, effort, and experience to develop its pouch making and filling technology including, for example, acquiring an engineering firm and hiring top talent to develop its machines.

24. Plaintiffs hired Filippo Furlotti in November 2007 to develop spouted pouch making and filling technology at Wild Parma. During his course of employment, Mr. Furlotti also worked on aseptic spouted pouch making and filling technology. From time to time, Mr. Furlotti was also engaged to work on various other packaging technology for Indag and hence, Indag provided drawings for these other types of machinery to Mr. Furlotti. Mr. Furlotti resigned in September 2013, and began working for Defendants shortly thereafter.

25. During his employment at Wild Parma, Mr. Furlotti had access to confidential drawings of Plaintiffs' machines, schematics of the individual machinery parts, and the identity of vendors and suppliers. Also, during his employment at Wild Parma, upon information and belief, Mr. Furlotti and Defendants concocted a scheme to steal and exploit Plaintiffs' confidential and trade secret information.

26. Mr. Furlotti had contacts with Defendants, and other subsidiaries of Defendants at least as early as April 2012. On information and belief, between April 2012 until his resignation in September 2013, Defendants were in contact with Mr. Furlotti, and met with him several times. Upon information and belief, Defendants' employees unlawfully entered the Wild Parma facility at night with Mr. Furlotti to see how the machinery operated.

27. Mr. Furlotti gave notice that he was resigning from Wild Parma in August 2013 and then negotiated an expedited termination of his employment effective as of September 24, 2013. One month later, in October 2013, Mr. Furlotti became employed at a competitor, FillShape.

28. Notably, FillShape was incorporated in February 2013, but remained dormant until November 2013 according to the Italian Register of Companies. Accordingly, it was only after Mr. Furlotti's arrival at FillShape that FillShape became an active company and began marketing filling machines that would compete with Plaintiffs' machines. For example, FillShape and IMA distributed a flyer dated September 2013 highlighting its aseptic pouch-filling solution, attached hereto as Exhibit B. Given the fact that FillShape had not been in the business of making, using or selling aseptic pouch filling machines prior to September 2013, and the fact that it can take over 10 years to develop this type of complex machinery, it is highly likely that FillShape and IMA conspired with Mr. Furlotti to misappropriate the technology that Mr. Furlotti and Plaintiffs were developing in confidence since 2007.

29. In July of 2014, Plaintiffs became aware that FillShape was offering for sale competitive hot filling and aseptic cold filling machinery. Immediately thereafter, Plaintiffs began an investigation to determine if Mr. Furlotti and by way of extension, Defendants, misappropriated any of Plaintiffs' technology and/or utilized Indag's patented technology in Defendants' design of a hot filling machine and aseptic cold filling machine.

30. Based on this investigation, Plaintiffs have recently learned that on multiple occasions, including at least in August 2013 and September 2013, shortly prior to his departure, Mr. Furlotti copied over 25,000 electronic files onto an external drive without permission. These files included a myriad of information, including Plaintiffs' drawings and schematics and the

identification of vendors that supplied components for Plaintiffs' pouch making and filling technology.

31. On information and belief, Mr. Furlotti took the external hard drive containing stolen confidential information and trade secrets with him when he left Wild Parma and with Defendants' knowledge, has used and will continue to use the information on the hard drive during the course of his employment at FillShape to develop competing machinery.

32. By way of example, Mr. Furlotti copied technical schematics of parts of the pouch filling machinery, including but not limited to a gripper and a linear filler. Upon information and belief, Mr. Furlotti has used these technical schematics to develop a competing filling machine for Defendants' benefit by saving time and effort in the development of a competing machine.

33. On information and belief, Mr. Furlotti and Defendants contracted with Plaintiffs' vendors to construct their parts, whose identity Plaintiffs have endeavored to keep confidential and proprietary. By copying Plaintiffs' confidential and proprietary designs and using its vendors, Defendants saved the time and effort to independently engineer a solution for a continuously operating machine.

34. Upon information and belief, Defendants have not yet completed building a machine. However, Plaintiffs' investigation revealed that certain parts of Defendants' machine have been built. For example, on information and belief, Defendants' machine includes an apparatus for loading empty pouches onto a transfer wheel, where the pouches are then later fed to the spout welding rotor. On information and belief, an examination of parts of Defendants' machine will show that Defendants' misappropriated other technology including but not limited to the method of filling a pouch aseptically, using a brushless operated gripper in the welding carousel unit, and the design and construction of the pouch portioning unit.

35. A forensic analysis of the Wild Parma laptop assigned to Mr. Furlotti demonstrated that his laptop had been surreptitiously wiped clean by specialized cleaning software that was not owned by Plaintiffs and without Plaintiffs' knowledge or consent. In furtherance of this conspiracy to cover up the unauthorized misappropriation of Plaintiffs' confidential information, Maria Francesca Iacci's laptop had also been wiped clean a few days prior her departure from Wild Parma. Ms. Iacci was Mr. Furlotti's assistant at Wild Parma, and on information and belief, is now employed as his assistant at FillShape. The same wiping software was used on both Mr. Furlotti's and Ms. Iacci's computers. On information and belief, Mr. Furlotti, acting in concert with Defendants, caused his laptop and his former assistant's laptop to be wiped clean in order to prevent Plaintiffs from acquiring evidence showing Mr. Furlotti's and Defendants' misappropriation of trade secrets.

36. On or about November 2-5, 2014, Defendants attended Pack-Expo, a trade show, in Chicago, Illinois for the purpose of marketing their pouch making and filling technology, including but not limited to hot filling machinery and aseptic machinery, to U.S. customers. On information and belief, Mr. Paolo Bianchi represented IMA and FillShape at the trade show.

37. At Pack-Expo, Mr. Bianchi was offering for sale hot fill machinery as well as aseptic filling machinery incorporating the misappropriated trade secrets and Indag's patented technology to customers that attended the show.

38. Mr. Bianchi, in explaining the history of the pouch filling technology, stated:

> "[t]his technology was not offered to the market, it was used basically by one big player, that kept this technology for themselves. They have for ten years the competitive advantage of using this technology and not delivering to competitors. What we did, **we took some people from this company**, we build up a new team, we design and we improve also this machine, some new concept with the background that we have."

-9-

39. On information and belief, Mr. Bianchi was referring to taking employees from Indag and Wild Parma to build up his team to develop a competing product using the confidential and trade secret information that the employees had access to while employed at Indag and Wild Parma.

40. At Pack-Expo, Defendants' marketing materials and information discussed information relating to its aseptic filling machines and hot filling machines. On information and belief, the aseptic filling machines and hot filling machines use the technology stolen by Mr. Furlotti from Plaintiffs and the technology claimed in the '017 Patent.

41. Upon information and belief, Defendants have not completed any sales of the aseptic filling machine in the United States, but are actively seeking customers in the United States. Defendants' misappropriation of Plaintiffs' trade secrets and unauthorized use of Indag's patent have saved Defendants numerous years and significant expense to develop a machine. If Defendants are not enjoined from using Plaintiffs' patented technology and its trade secrets and/or confidential information, Plaintiffs' (and its licensees') potential to introduce its aseptic filling technology to the United States market is irreparably harmed.

## COUNT I: PATENT INFRINGEMENT AGAINST ALL DEFENDANTS

42. Plaintiffs incorporate by reference Paragraph 1 through 41 above as if recited herein.

43. The United States Patent and Trademark Office issued U.S. Patent No. 7,648,017 (hereinafter "the '017 patent" or "the suit patent") on January 19, 2010. A copy of the '017 patent is attached hereto as Exhibit A. Indag is the owner by assignment of all right, title, and interest in the '017 patent.

44. The '017 patent covers technology related to continuously feeding pouches and spouts to a pouch processing machine. Claim 1 of the '017 patent claims a system that comprises, in combination, a transfer assembly that generally can simultaneously transfer a spout and pouch to an apparatus.

45. On information and belief, Defendants' pouch making and filling machine includes a transfer wheel and corresponding machinery that meets each of the limitation of at least claim 1 of the '017 patent.

46. Accordingly, Defendants have been and are offering for sale within the United States, pouch making and filling machinery which, directly or indirectly, infringes one or more claims of the '017 Patent.

47. Defendants' acts of infringement of the '017 Patent have been made without the express or implied license by Plaintiffs, and are willful deliberate and intentional.

48. Defendant's acts of infringement have caused and will continue to cause damage to Plaintiffs and Plaintiffs are entitled to recover from Defendants the damages sustained by Plaintiffs and any additional remedy in an amount to be determined at trial.

49. Plaintiffs have been irreparably damaged by Defendants' infringing acts, and will continue to be irreparably harmed unless Defendants are enjoined from further acts of infringement.

### COUNT II:
### MISAPPROPRIATION OF TRADE SECRETS
### UNDER THE ILLINOIS TRADE SECRETS ACT

50. Plaintiffs incorporate by reference Paragraph 1 through 41 above as if recited herein.

51. Due to Mr. Furlotti's position at Wild Parma and Indag, Mr. Furlotti had access to Wild Parma's and Indag's confidential and trade secret information, including without limitation

-11-

drawings, schematics, technical information, identity of vendors, and information of the kind identified in Paragraph 22.

52. Mr. Furlotti, at the direction and behest of Defendants, copied numerous documents containing confidential and trade secret information without authorization from Plaintiffs prior to joining FillShape to develop competing pouch filling machines. The extent of Defendants' misappropriation is not known at this time. Upon information and belief, further discovery will show that Defendants and Mr. Furlotti misappropriated confidential and/or trade secret information, including but not limited to methods of aseptic filling, proprietary welding grippers and pouch portioning unit, and using proprietary knowledge of suppliers to source parts for Defendants' pouch filling machinery.

53. Mr. Furlotti joined Defendants, taking on the same job for Defendants that he formerly held for Plaintiffs – an engineer designing pouch filling machinery, including but not limited to aseptic pouch filling technology.

54. Upon information and belief, Mr. Furlotti, with Defendants' knowledge and consent, has misappropriated and used such confidential and trade secret information in the design of a competing pouch filling machinery for Defendants.

55. If Plaintiffs' trade secrets were publicly disclosed, Plaintiffs would suffer immediate and irreparable injury. Plaintiffs would lose sales and its reputation would be harmed as a result of the disclosures. Accordingly, Plaintiffs have made reasonable efforts to maintain the secrecy of its trade secret and confidential information including for example, marking its drawings with a warning against unauthorized third-party use, erecting fencing and natural barriers surrounding the building, placing signs indicating authorized access only on the building, installing an alarm system and camera system, and requiring visitors to be buzzed in

through multiple doors. Plaintiffs also restrict access to its computer network by requiring employees to enter passwords. Plaintiffs require their licensees of the trade secrets to sign confidentiality agreements, and are thus, precluded from disclosing those trade secrets. Accordingly, Plaintiffs' trade secrets are not generally known.

56. Plaintiffs' confidential information constitute trade secrets as defined by the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et. seq.*

57. Defendants have utilized or will inevitably use and disclose Plaintiffs' trade secrets for their competitive advantage and to the detriment of Plaintiffs.

58. Unless Defendants are enjoined from using or disclosing Plaintiffs' trade secrets, Plaintiffs will suffer sever and incalculable losses.

59. Plaintiffs do not have an adequate remedy at law.

60. Defendants' misappropriation has been and continues to be willful and malicious.

### COUNT III:
### MISAPPROPRIATION OF TRADE SECRETS
### UNDER THE ITALIAN INDUSTRIAL
### PROPERTY RIGHTS CODE (IN THE ALTERNATIVE)

61. Plaintiffs incorporate by reference Paragraph 1 through 41 and 50 through 60 above as if recited herein.

62. In the alternative, Article 98 of the Italian Industrial Property Rights Code protects undisclosed information as set forth below :

> Business information and technical-industrial experience, including commercial ones, subject to the legitimate control of the holder, shall be protected, where such information:
>
> a) are confidential, in the sense that as a whole or in the specific configuration or combination of their elements, they are not generally known or easily accessible to experts or operators in the field;

      b)    have economic value due to their confidential character; and

      c)    are subjected, by the persons who exercise a legitimate control over them, to measures reasonably adequate to maintain their confidentiality.

63. As recited in paragraphs 50-60 above, each of the elements set forth in paragraph 62 are met, and thus Defendants are liable for misappropriation of trade secrets under Italian law, in the alternative.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully asks that the Court:

A. Enter judgment against Defendants finding that Defendants have infringed the '017 Patent;

B. Enter judgment against Defendants finding violated the Illinois Trade Secrets Act or in the alternative, Article 98 of the Italian Industrial Property Rights Code;

C. Award damages adequate to compensate Plaintiffs for Defendant's infringement of the '017 Patent;

D. Award increased and treble damages for willful infringement pursuant to 35 U.S.C. §284;

E. Award increased and exemplary damages for Defendants' willful misappropriation of Plaintiffs' trade secrets which was intentional and motivated by malice and in conscious disregard of Plaintiffs' rights;

F. Enter a preliminary and permanent injunction prohibiting Defendants and its subsidiaries, officers, directors, agents, servants, employees, licensees, successors, and assigns, and those in active concert or participation from infringing the '017 Patent, from benefiting from

the misappropriation of Plaintiffs' trade secrets and against such continued misappropriation of Plaintiffs' trade secrets;

      G.      Order an accounting to be had to determine the amount of damages to Plaintiffs arising out of Defendants misappropriation;

      H.      Enter a judgment and order requiring Defendants to pay Plaintiffs prejudgment and post-judgment interest on the damages awarded;

      I.      Find that this is an exceptional case pursuant to 35 U.S.C. §285;

      J.      Order Defendants to pay Plaintiffs' costs and attorney's fees; and

      K.      Grant Plaintiffs such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

Dated: June 5, 2015

*/s/ Andrew D. Campbell*
Andrew Dylan Campbell
NOVACK AND MACEY LLP
100 North Riverside Plaza, Suite 1500
Chicago, IL 60606
(312) 419-6900
Email: *acampbell@novackandmacey.com*

*Local Counsel for Plaintiffs INDAG GmbH & Co. Betriebs KG and Plaintiff Wild Parma, S.r.L.*

Doc. No. 733895